## <u>AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT</u>

I, Special Agent Vanessa Flick,  depose and state as follows:

## <u>INTRODUCTION</u>

1.      I am a Special Agent with the Federal Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF"). I have been an ATF agent since 2022, and during that time I have been

involved in investigations of violations of federal firearm, controlled substance, and explosives

laws. Prior to my employment as a Special Agent with the ATF, I was a Police Officer in the City

of Seattle, WA for approximately twelve years. In my role as Police Officer, I have made arrests

for firearms and narcotics offenses. I also served as an Officer with the Seattle Police

Department's Anti-Crime Team ("ACT").  The team's primary function was to investigate

narcotics activity. The team's activities included proactive operations to identify and arrest

individuals engaged in various levels of drug dealing. During my tenure as a Seattle Police

Officer, I was also a member of the Department's Hostage Negotiation Team ("HNT") during

which I negotiated with suspects during highly dynamic incidents to ensure a safe resolution for

the suspect, officers, and community. I was also a member of the Coast Guard Reserve from

2006-2014. Currently, I am assigned to a group in the Boston Field Division of the ATF that, in

part, works with other Federal, State and Local Police Departments to investigate and prosecute

violations of the Federal Firearms, Explosives and Controlled Substance Laws.

2.      I have written and/or participated in the execution of numerous search warrants

resulting in the seizures of large quantities of firearms, United States currency, and records of

firearms. I have participated in the debriefing of numerous defendants, informants and witnesses

who had personal knowledge regarding firearms trafficking organizations. I have participated in

all aspects of firearms investigations, including conducting surveillance, executing searches

pursuant to court-ordered search warrants, and executing arrests. I have received specialized training in the field of firearm identification and enforcement. In addition, I have attended and completed the two-week ATF Advanced Arson and Explosives Investigator training (AAEI) at the National Center for Explosives Training and Research (NCETR) in Huntsville, AL.   Based on my training and experience as an ATF Special Agent, I am familiar with Federal Firearms and Explosives Laws.

3.      I submit this affidavit in support of a criminal complaint and arrest warrant charging Daniel Medina ("MEDINA"), (YOB: 1960), with: felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1); unlawful possession of a machine gun, in violation of 18 U.S.C. § 922(o); and unlawful possession of explosives, in violation of 18 U.S.C. § 842(i).

4.      The facts in this affidavit come from my review of oral and written reports by other Law Enforcement officers, records including information from database checks, and my training and experience. This affidavit is intended to show merely that there is probable cause for the requested complaint and arrest warrant and does not set forth all of my knowledge about this matter.

**<u>PROBABLE CAUSE</u>**

*<u>Background of Investigation</u>*

5.      On Monday, July 1, 2024, Officers with the North Andover Police Department ("NAPD") were dispatched to the area of Jefferson Street in North Andover, MA for a report of a male shooting fireworks and potentially damaging property. Upon arriving, NAPD  officers were met by Witness #1,  the reporting party, who indicated that he heard what sounded like an explosion.  Witness #1 looked out of his window and observed an unknown man running towards the back of the residences located at Village Green Drive.

6.      On scene, NAPD officers observed a damaged white 2012 Subaru Outback, bearing MA registration 476XYB parked outside of Village Green Drive. The Subaru appeared to have a crater in the rear passenger door and multiple small indentations around the cratered door.  Another vehicle, a grey Mercedes C300, bearing MA registration 3THF71, parked beside the damaged Subaru, also had a small circular dent at the bottom of the driver side door[1].

7.      Officers were then approached by Witness #2.  Witness #2 reported that they heard an explosion and looked outside their window.  Witness #2 observed their neighbor, MEDINA, running from the scene of the damaged vehicles toward the rear of MEDINA's residence located on Village Green Drive.

8.      NAPD observed a circular piece of paper on the ground immediately below the damaged rear passenger door of the Subaru. The paper appeared to have a brown residue on it and was still emitting a similar odor to a firework. Upon closer inspection, officers discovered that the paper appeared to be a piece of mail bearing MEDINA's name and address on it.

9.      NAPD requested assistance from the Massachusetts State Police Explosives Unit ("MSP EU"). Upon reviewing the damage to the Subaru, MSP EU advised NAPD that the paper, cardboard, and electrical tape left behind at the scene are consistent with common ingredients used in manufacturing homemade explosive devices. MSP EU also informed NAPD that having reviewed the damage to the vehicle, specifically the indentation in the door, that it was likely that ball bearings or shrapnel of some sort was used. These items are associated with a homemade explosive device and not commercial fireworks.

---

[1] The owners of both the Mercedes and the Subaru are known to the Government. Witness #1 and Witness #2, who are also known to the Government, provided the names of the owners at the time they made statements to the police. ATF followed up with those owners and learned that the damage to both vehicles observed initially by police was new and not the result of any preexisting incident.

10.     Later that same day, Witness #1 called one of the responding officers and left a voicemail.  Witness #1 reported that he and his neighbors observed MEDINA walk over to the damaged Subaru and spray paint the damaged area with white paint. MEDINA was then observed returning to his residence.

11.     NAPD has previously responded to MEDINA's residence for calls ranging from neighbor disputes, domestic disturbances, and medical assistance calls.

12.     The day following the report of an explosion, NAPD sought and obtained a search warrant, docket number 2418-SW-275, from the Lawrence District Court, for MEDINA's residence.  On July 2, 2024, officers executed the search warrant.

13.     During the search warrant, among other things, officers located the following in the residence, where MEDINA resided alone:

     a. a black privately made .50 caliber rifle with scope;
     b. 7 complete PMF[2] rifles;
     c. 15 PMF pistols;
     d. a MAADI company 7.62 rifle bearing serial number LM05925;
     e. a Ruger 22 caliber rifle bearing serial number 246-73192;
     f. a Winchester model 70 30-06 caliber rifle bearing serial number G76817;
     g. a Harrington and Richardson Shotgun bearing serial number 22917;
     h. an Acero Especial Bellota Shotgun bearing serial number 77315;
     i. a Traditions Deer Hunter Rifle bearing serial number 14-13-025398-95;
     j. a Winchester Model 1300 12 Gauge Shotgun bearing serial number L3107140;
     k. 2 antique firearms (Marlin model 1893 rifle & Ellipietta revolver);
     l. over 9,000 rounds of various calibers of modern ammunition
     m. approximately 75 magazines for various caliber firearms;
     n. various parts of firearms;
     o. miscellaneous books/pamphlets pertaining to the building of firearms, manufacturing of explosives and drugs;
     p. shrapnel accessories such as BB's and balls;
     q. multiple firework containers; and

---

[2] Privately made firearms (PMFs) are often referred to as a "ghost gun" because they are not marked with a serial number and are therefore far more difficult for law enforcement to trace if they are used to commit a crime. I know from training and experience that individuals can make PMF's from scratch, buy weapons parts kits, including "build to shoot kits" or print weapons parts or the entire firearm using personal or professional 3D printers.

r.   various powders that were submitted to the MSP lab for analysis.





14.   Also recovered during the search warrant, was a "Glock switch", affixed to the rear of the slide of a privately made Glock-type semiautomatic pistol, bearing no serial number. A Glock switch is a device that allows a conventional semi-automatic pistol to function as a fully automatic firearm, also known as a machine gun.   Under federal law, as relevant here, the term "machinegun" means any weapon which shoots more than one shot by a single pull of the trigger. The term also includes any part designed for use in converting a weapon into a machinegun (26 U.S.C § 5845).



15.   Additionally, the two PMF rifles seized from MEDINA's residence were preliminarily field tested by agents (unloaded).  During the field test, when these rifles were

placed into fully automatic mode, it was observed that with one pull of the trigger, each would fire every round in the magazine.  As a result, these rifles are also considered machineguns under federal law and are illegal to possess.



16.     I have reviewed the MSP lab report detailing the findings of the chemical analysis performed on the suspected explosive materials recovered from MEDINA's residence, which were submitted to the MSP Crime Laboratory for testing. The lab report revealed that among other things the suspected explosive material contained flash powder, which consists of a combination of potassium chlorate and aluminum powder, a high explosive; as well as black powder and smokeless powder, a low explosive[3].

17.     Furthermore, I am aware that the aforementioned material analyzed in the MSP lab report and recovered from MEDINA's residence, in combination with one another whether in high or low explosive form, constitute an "explosive" or explosive material within the meaning of 18 U.S.C. §844(j) of federal law; because the powder seized from MEDINA's residence is a mixture capable of ignition by fire, friction, concussion, percussion, or detonation, and thereof capable of causing an explosion.

---

[3] High explosive is an explosive that generates gas with extreme rapidity and has a shattering effect.  Low explosive is a relatively slow-burning explosive, usually set off by heat or friction and used in propelling charges.

18.     During their review of the powder cannisters recovered in MEDINA's basement, MSP Troopers trained in explosive ordinances and present at the execution of the search warrant, found commercially manufactured containers of powder, which were labeled as containing potassium chlorate and aluminum powder, as well as other components. The chemical ingredients identified on the labels of those powder containers were consistent with the results of the MSP lab's chemical analysis. In addition, these commercial containers were produced and shipped in interstate commerce by the following companies:

   a.  Goex Black Rifle Powder; located in Louisiana; and
   b.  Hodgdon Powder Company; located in Kansas.



19.     I consulted with ATF agents who possesses specialized knowledge and training as to the identification, origin, and classification of firearms and ammunition. The following firearms were manufactured outside the Commonwealth of Massachusetts:

   a.  MAADI Company AK-47, 7.62 rifle;
   b.  Ruger 10/22, .22 caliber rifle;
   c.  Winchester Model 70, 30-06 caliber rifle;
   d.  Harrington and Richardson Shotgun;
   e.  Acero Especial Bellota Shotgun;
   f.  Traditions Deer Hunter Rifle;
   g.  Winchester Model 1300 12 Gauge Shotgun; and
   h.  A.S.M 44 caliber revolver pistol.

20.     In addition, the over 9,000 rounds of modern ammunition were located in MEDINA's residence and those were also all manufactured outside the Commonwealth of Massachusetts.

21.     In or around 2002, MEDINA's was convicted of Assault and Battery in the Lawrence District Court, docket # 0218CR000793A.  MEDINA pled guilty and received a sentence of two- and one-half years' incarceration suspended for two years. As such MEDINA is a convicted felon under federal law and is precluded from possessing any firearms, ammunition, and explosive material.

## CONCLUSION

22.     Based on the foregoing, I respectfully submit there is probable cause to believe that on or about July 2, 2024, within the District of Massachusetts, MEDINA, knowing that he was previously convicted in a court of a crime punishable by imprisonment for a term exceeding one year, , did knowingly possess a firearm and ammunition, in or affecting interstate commerce, in violation of 18 U.S.C. § 922(g)(1); did knowingly possess explosive material, in or affecting interstate commerce, in violation of 18 U.S.C. § 842(i)(1); and did knowingly unlawfully possess a machine gun, in violation of 18 U.S.C. § 922(o).

/s/ Vanessa Flick
_____

Vanessa Flick
Special Agent, ATF

Sworn to before me via telephone in accordance with Fed. Rule Crim. P. 4.1 on October 3, 2024.

_____
HONORABLE M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE